FILED & ENTERED

MAY 15 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>4th Street East Investors, Inc.,<br><br><br><br><br><br>Debtor. | Case No.: 2:12-bk-17951-NB<br><br>CHAPTER 11<br><br>**TENTATIVE RULINGS RE CLASSIFYING DEFICIENCY CLAIMS ETC., IN CONNECTION WITH MOTIONS OF COASTLINE RE HOLDINGS CORP (1) FOR RELIEF FROM THE AUTOMATIC STAY AND (2) TO CONVERT CASE FROM CHAPTER 11 TO CHAPTER 7**<br><br>Date:    May 15, 2012<br>Time:    2:00 p.m.<br>Courtroom: 1545 |

The following tentative ruling is issued with respect to the motions of Coastline RE Holdings Corp. ("Coastline") for relief from the automatic stay of 11 U.S.C. § 362(a) (dkt. 59) and for conversion of this case from chapter 11 to chapter 7 under 11 U.S.C. § 1112 (dkt. 57).

**I.    BACKGROUND**

The above-captioned debtor ("Debtor") owns and operates a storage facility consisting of 5 buildings with 240 rentable storage units, an office, and a residence for an on-site manager (the "Property"). On March 5, 2012, Debtor filed its voluntary

chapter 11 petition (the "Petition Date").  Debtor attributes its financial troubles to "the general deterioration of the market over the past several years [that] caused several vacancies in storage units" which created "some cash flow problems," as well as the balloon payment on Coastline's promissory note which came due on November 1, 2011. *Decl. of K. Holmes* (dkt. 68) at 20:21-25.

## II.    **ALEGED BAD FAITH**

Coastline alleges "bad faith" by Debtor and argues that this is sufficient cause for relief from the automatic stay (under 11 U.S.C. § 362(d)(1)) and for conversion of this case to chapter 7 (under 11 U.S.C. § 1112(b)), citing *In re Stolrow's Inc.*, 84 B.R. 167, 171 (9th Cir. BAP 1988).  Coastline also alleges that relief is warranted because this case is essentially a "two-party dispute," citing *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 582-83 (9th Cir. BAP 1985).

Coastline primarily alleges that Debtor cannot confirm a plan of reorganization and that creditors would be better served if the funds used for Debtor's attorneys were paid directly to those creditors.  Coastline also argues that Debtor or its principals have violated fiduciary duties by favoring insiders.

Coastline is correct that this is essentially a two-party dispute:  apart from Coastline's deficiency claim and the claims of Debtor's insiders, all other general unsecured claims amount to less than $9000.  It is also true that, although Debtor alleges substantial insider claims, insider votes cannot be counted for purposes of "cramdown" under 11 U.S.C. § 1129(a)(10) & (b).

But Coastline does not dispute that Debtor has been making adequate protection payments in the dollar amount that I previously set.  Nor does Coastline dispute that the case is in its early days.

Although Coastline asserts that Debtor is delinquent in real estate taxes, it has not established that any such delinquency is for post-petition periods.[1]  In addition,

---

[1] Coastline has filed substantially identical declarations of Ms. Kimberly Davis in support of its motion to convert (dkt. 57) and its motion for relief from the automatic stay (dkt. 59).  Debtor has filed substantially identical evidentiary objections (dkt. 71& 73) in support of its opposition papers (dkt. 72 & 68).   Coastline's declarations rely on hearsay from the Tax Collector (as defined therein).  But the printouts from the Tax Collector's website are

although ultimately I conclude that Debtor cannot cram down a plan, Debtor has asserted colorable arguments for doing so, and as discussed below Debtor is correct that the interests of insider claims (alleged to be approximately $1.4 million) are entitled to some consideration.

In these circumstances it is not bad faith for Debtor's insiders, who apparently have invested substantial time and money, to attempt a reorganization that would provide no less to Coastline than what it would receive upon foreclosure while preserving a possible "up side" for themselves, if Debtor is ever able to turn around its finances. That begs the question whether such a reorganization is realistically in prospect.

### III. DEBTOR HAS NO EQUITY IN THE PROPERTY AND NO PROSPECTS FOR AN EFFECTIVE REORGANIZATION UNDER 11 U.S.C. § 362(d)(2)

Relief under 11 U.S.C. § 362(d)(2) requires a lack of equity in the Property (which Debtor concedes) and that the Property is not necessary to an "effective reorganization." In other words, there must be "a reasonable possibility of a successful reorganization within a reasonable time." *In re Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 376 (1988) (citation and internal quotation marks omitted). The burden is on Debtor to make that showing. 11 U.S.C. § 362(g).

Debtor claims that Coastline's request for relief is premature because this case is in its early days and Debtor is complying with all of its obligations. It is true that at this early stage Debtor should not have to show detailed plans for reorganizing.

But Debtor must at least outline how it would successfully reorganize. For two reasons, it has not done so: (a) it has not shown any financial prospects for reorganizing, and alternatively (b) it has not shown that it can meet the legal test to "cram down" a plan over Coastline's opposition.

---

admissible under an exception to the hearsay rule. *See* FRE 803(8). Those printouts support the allegations in Coastline's declarations that Debtor owes real estate tax debts of $14,862.83 + $13,681.89 + $12,438.07. Nevertheless, as Debtor argues (dkt. 68 n.4), the Tax Collector may have misapplied some payments to obligations from before, rather than after, the Petition Date. Therefore it appears that Debtor may be current on its accruing post-petition tax obligations.

### A.     Debtor Has Not Shown Any Financial Prospects For Reorganizing

Debtor's opposition papers (dkt. 68 & 73) do not show how Debtor could fund any reorganization. Historically Debtor has lost money, and it offers no data or strategy to change that.

Debtor reports net losses of $19,126.36 during the roughly two months prior to the Petition Date, on top of losses of $17,250.59 in 2011 and $40,410.00 in 2010. *See Opposition to Motion to Convert* (dkt. 73) Ex. B. Debtor attributes its negative cash flow to general market conditions (*Decl. of K. Holmes* (dkt. 68) at 20:21-25)) and does not suggest anything that it would do differently from what it has been doing.

Debtor's reorganization apparently depends entirely on the hope of improved market conditions and reducing its payments to Coastline. Debtor asserts that currently and in the future it will generate "a positive cash flow" based on a presumed reduction in the dollar amount of Coastline's secured claim. *Decl. of K. Holmes* (dkt. 68) at 22:16-22.

Coastline objects that there is no foundation for this assertion or for any admissible opinion to support the projected cash flow. That objection is **sustained**. *See Evidentiary Objections To Declaration Of Kim Holmes [etc.]* (dkt. 71 & 73); Fed. R. Evid. 701, 901.

Debtor's projected positive cash flow is also contradicted by the available evidence. Although Debtor asserts that it will have positive cash flow after reducing Coastline's claim, Debtor's payments to Coastline are already in the reduced dollar amount that Debtor seeks. *See Emergency Motion For Order Authorizing Use Of Cash Collateral* (dkt. 2) at 8:18-21 (proposing payments of $4,167/mo., which equals 5% interest-only payments based on an assumed valuation of $1 million for the Property) *and Order Granting Motion For Interim Use Of Cash Collateral* (dkt. 39) at 3:18-24 (ordering payments of $4,167/mo.). Despite this reduction Debtor seeks to borrow money to fund its ordinary expenses. *See Motion For Order Authorizing Debtor To Obtain Postpetition Financing [etc.]* (dkt. 61).

Although Debtor previously projected a thin profit based on assumed rental receipts of $15,000 per month (dkt. 2 at Ex.1), it now projects rental receipts of $14,500 per month (dkt. 68, Ex.B). After expenses, Debtor projects negative cash flow (not including a proposed $3,000 cash infusion from an insider). *Id.* at n. 2.

Debtor also provides no historical or current data to test these projections, so the actual situation might be worse. The only post-petition data in the record is for the partial month in which this case was filed, from March 6 through 31, 2012. If rents were paid on or near the first of the month then any data for the rest of the month is probably meaningless, but in any event it does not help Debtor. *See Monthly Operating Report ("MOR") #1* (dkt. 56), next-to-last page (showing rental receipts of only $7,742.44 for 3/6/12 – 3/31/12).

In sum, Debtor's projections lack any foundation, and even assuming that they are accurate and that Debtor can reduce Coastline's secured claim and interest rate as it hopes, those projections apparently show that Debtor is and will be operating at a net loss. Debtor has not suggested any additional restructuring of its finances or alternative means to generate additional income or reduce expenses that could be the basis for a reorganization. Based on these facts Debtor has not met its burden to show "a reasonable possibility of a successful reorganization within a reasonable time" and therefore relief must be granted under 11 U.S.C. § 362(d)(2). *Timbers,* 484 U.S. at 376.

**B.    Debtor Has Not Shown A Reasonable Possibility Of Being Able To Cram Down A Plan Of Reorganization Over Coastline's Opposition**

For cramdown Debtor would need to obtain a favorable vote by at least one impaired class, not counting the votes of insiders. *See* 11 U.S.C. § 1126(c) (voting) *and* 1129(a)(10) & (b) (cramdown). Coastline's general unsecured deficiency claim can out-vote any other general unsecured claims if all of those claims are classified together (assuming that Coastline does not make the election under 11 U.S.C. § 1111(b)). Classification is therefore critical.

Another issue, not argued by Coastline but also critical to any cramdown, is whether any potential plan would be "fair and equitable" to the class that is being

-5-

crammed down.  11 U.S.C. § 1129(b).  That concept is worth examining in greater detail.

Why would creditors vote against a "fair and equitable" plan?  They might be competitors who seek to drive the debtor out of the marketplace, or they might seek to extort more than their fair share of the bankruptcy estate, or they might reject an economically advantageous plan out of sheer spite.

A more benign example is that such non-consenting creditors might simply disagree as to what makes economic and practical sense.  For example, a creditor like Coastline (which holds both a secured claim and an unsecured claim) might vote against any prospective plan based on a rational economic calculation that foreclosure is likely to give it a more certain and immediate recovery than a plan with all of the risks inherent in a plan.  Those risks might include (in that creditor's view) that I could under-value its secured claim, or that I could set too low an interest rate to provide the present value of its secured claim, or that I could confirm a plan that is simply too speculative in exchange for the promise of future dividends.

In addressing these types of concerns bankruptcy courts typically consider whether the interests of other parties outweigh the burdens on dissenting creditors.  The interests of other secured creditors generally are not weighed as heavily because they have the protection of their collateral.  The principal focus is on unsecured creditors.

### 1. The Secured Claims In This Case Cannot Satisfy The Requirement Of A Consenting Impaired Class

Debtor argues that it likely could obtain favorable votes of either the secured real estate tax claim or the secured vehicle claim, or both.  That is too thin a reed on which to hang a cramdown.  These secured claims are by definition protected by the value of their collateral and given the other circumstances, including the relative sizes of the claims at issue, Debtor has not shown how it could ever be "fair and equitable" to cram down a plan on Coastline for any marginal benefit to those secured claims.

Debtor argues in the alternative that it can separately classify Coastline's general unsecured deficiency claim from other general unsecured claims.

## 2. **Summary of The Parties' Arguments On Classification Of General Unsecured Claims**

Debtor argues that it can separately classify Coastline's general unsecured deficiency claim of approximately $200,000 to $450,000 from Debtor's other non-insider general unsecured claims of less than $9,000 in total. Debtor relies on the fact that Coastline holds a guaranty, whereas other creditors apparently do not.

Debtor cites a recent decision of the Bankruptcy Appellate Panel (the "BAP") affirming a bankruptcy court decision to confirm a plan that separately classified a deficiency claim. The basis for separate classification was that the creditor had a non-debtor source of repayment, namely a guaranty. *In re Loop 76*, 442 B.R. 713 (Bankr. D. Ariz. 2010) ("*Loop I*"), aff'd, *In re Loop 76*, 465 B.R. 525 (9th Cir. BAP 2012) ("*Loop II*").

Coastline replies that the facts are different in this case because Debtor's guarantor (Mr. DeBelling) is "pretty much judgment proof." *Reply* (dkt. 76) at 4:16. "Unless it is shown that the DeBelling guaranty will give value to [Coastline] the fact that Mr. DeBelling signed a guaranty is a distinction without a difference and will not justify separate classification." *Id.* at 8:5-8.

Coastline's argument is supported by *Loop I*, which suggests that if the guarantors were insolvent (or if the creditor gave up on pursuing the guarantors) then the existence of the guaranty might not render the claims dissimilar. *Loop I,* 442 B.R. at 724. But the BAP implicitly rejected this argument, in *dicta*, by questioning whether collectability "is even a factor to consider." *Loop II,* 465 B.R. at 534 n. 7 & 541 n. 11 (citation omitted).

Therefore the initial issue is whether to follow the legal analysis in *Loop I*, *Loop II*, or neither decision. For the reasons stated below, I respectfully disagree with the analysis in both *Loop I* and *Loop II* regarding whether the existence of a guaranty requires that claims be separately classified. In addition I agree with the suggestion in *Loop I* that collectability does matter. In deciding not to follow *Loop II* I hold that BAP decisions are not strictly binding (although they are often persuasive). *See, e.g., In re*

*Rinard*, 451 B.R. 12, 20-21 (Bankr. CD Cal. 2011), *disagreed with on other grounds, In re Hernandez* (Case No. 2:11-bk-53730-NB, dkt. 40).

### 3. Two Step Analysis:  Mandatory Separation Of Some Claims; Sufficient Justification Required For Remaining Claims

*Loop II*'s legal discussion starts with a helpful description of the two step analysis that applies to classification issues.  *Loop II*, 465 B.R. at 536-37.  First, claims *have to be* separately classified if they are found as a factual matter to be not "substantially similar."  11 U.S.C. § 1122(a).  Although the Bankruptcy Court has "broad discretion" in classifying claims, it must evaluate "the nature of each claim, *i.e.,* the kind, species, or character of each category of claims," sometimes also described as the "legal character" of those claims, and if those claims are not substantially similar then they *must* be separately classified.  *Id.* at 536-37 (citations and quotation marks omitted).

Second, even if claims are substantially similar, a plan *may* place those claims in different classes in some circumstances.  According to the BAP, the debtor must show "a business or economic justification for doing so."  *Loop II,* 465 B.R. at 536 (citing *In re Barakat,* 99 F.3d 1520, 1526 (9th Cir. 1996)).  *Cf. Barakat*, 99 F.3d at 1526 (debtor must show a "legitimate" business or economic justification).  It is not a sufficient justification that the creditor is eligible to make an election under 11 U.S.C. § 1111(b), nor can a plan place similar claims in different classes "solely to gerrymander an affirmative vote" for the plan.  *Id.* at 536-37 (citing *Barakat*, 99 F.3d at 1525).  *Cf. Barakat*, 99 F.3d at 1525 & 1526 (not using the word "solely").

There is a "paucity of case law defining what constitutes either similarity or substantial similarity of claims."  *Loop II,* 465 B.R. at 537 (citation and quotation marks omitted).  It is also unclear where the dividing line exists between a legitimate "business or economic justification" for separate classification and illegitimate "gerrymandering."

### 4. This Court Is Not Required To Approve Separate Classification Of Coastline's Unsecured Deficiency Claim As A Matter Of Law

The two leading Ninth Circuit decisions are *In re Johnston,* 21 F.3d 323 (9th Cir. 1994) and *Barakat,* 99 F.3d 1520.  In *Johnston* the bankruptcy court confirmed a plan

that separately classified the deficiency claim of a secured creditor (Steelcase) on the basis of special circumstances (discussed below) and the Ninth Circuit affirmed. In *Barakat,* 99 F.3d 1520, the bankruptcy court denied confirmation of a plan that separately classified a deficiency claim of a life insurance company ("LICV") and the Ninth Circuit affirmed, distinguishing *Johnston* on the basis that no comparable special circumstances existed. *Id.* at 1526. The question is what specific facts distinguish *Barakat* from *Johnston*.

The BAP distinguished *Barakat* on the basis that, allegedly, the Ninth Circuit "had no reason to address a third-party source of payment because none existed." *Loop 76*, 465 B.R. at 541. That is incorrect. The debtor in *Barakat* was one of four co-obligors (two husbands and two wives) that the Ninth Circuit defined as the "Barakat Group." *Barakat,* 99 F.3d at 1522, nn.1-2 and accompanying text.

Turning to *Johnston*, the BAP saw "no legal distinction between whether the claimant can recover against collateral held by a third party, or whether the claimant can recover from a third-party guarantor, when determining the similarity of the claims." *Loop II*, 465 B.R. at 541 (citation omitted). This sounds like a conclusion of law, especially because the BAP's *dicta* suggests that any guaranty, no matter how uncollectible, renders the associated claim dissimilar from other unsecured claims. *Id.* at 534 n. 7 & 541 n. 11. Under these standards, any guaranty apparently makes a claim dissimilar, so how could the bankruptcy court find otherwise? *See also Loop I*, 442 B.R. at 716 *et seq.* (heading states, "Johnston Holds [That] A Nondebtor Payment Source Renders a Claim Dissimilar"). Nevertheless *Loop II* may permit some discretion because it states that the bankruptcy court may "consider" the existence of "a third-party source for payment, including a guarantor, when determining whether unsecured claims are substantially similar under § 1122(a)." *Loop II*, 465 B.R. at 541.

In *Loop I* the bankruptcy court reached similar conclusions to the BAP while articulating a different analysis of *Johnston*. First it summarized the three special circumstances identified in *Johnston* and then it dismissed two of them:

> [T]he Ninth Circuit concluded [in *Johnston*, 21 F.3d 323, 328] that

"Steelcase *is* situated differently from other unsecured creditors" [emphasis in original] for some or all of three reasons on which the bankruptcy court apparently relied:

> **1.** "[The unsecured claim of] Steelcase ... unlike all others, is partially secured by collateral of [nondebtor] COS, the primary obligor;"
>
> **2.** "[Steelcase], unlike all other unsecured creditors, is embroiled in litigation with Johnston [the debtor], and … its claim thus may be offset or exceeded by Johnston's own claim against Steelcase;" and/or
>
> **3.** "[I]f successful in the litigation, [Steelcase] could be paid in full before all other unsecured creditors." [*Johnston*, 21 F.3d at 328]

**Of these three factors, only the first seems to have any bearing on the nature of the claim or its similarity to other claims.** The **second factor** affects only the amount of the claim that might ultimately be allowed. Except for the small "administrative convenience" claims that Code § 1122(b) specifically authorizes to be classified together and distinctly from other unsecured claims, there is no argument or authority that similarity of claims should be determined by their relative size. Indeed, the Code's specific authorization for this classification based on amount implies that but for such specific authorization classification based on amount would not be appropriate.

The **third factor** identified in *Johnston* is based solely on how the claim is treated under the debtor's plan, not on any characteristic of the claim itself. No analysis or authority suggests that similarity of claims should be determined according to how they are treated in the plan.

Both the second and third *Johnston* factors might provide valid *reasons* for separate classification of similar claims, because they bear on the *treatment* of the claim and Code § 1123(a)(4) requires claims to be classified in different classes if they are to be treated differently. But, as noted above, the justification for separate classification of similar claims provides no basis on which to ascertain dissimilarity, because dissimilar claims must be separately classified without respect to the plan proponent's reasons or justifications.

Consequently the only factor in *Johnston* that seems at all relevant to either the bankruptcy court's finding, or the Ninth Circuit's affirmance of substantial dissimilarity, is that the creditor had a non-debtor source of repayment of the claim. The Ninth Circuit's opinion emphasized the particular significance of this first factor when it stated "Steelcase, unlike other unsecured claimants, holds a partially secured interest in COS, thereby according Steelcase different status" than the other unsecured creditors. [*Johnston*, 21 F.3d at 328]

It therefore appears that the holding of Johnston is that a claim that may be paid from a non-debtor source is not substantially similar to claims that lack such non-debtor source of repayment. Or, more accurately, the holding of *Johnston* appears to be that **it is permissible for a bankruptcy court to find, as a matter of fact, that a non-debtor source of repayment of a claim renders it dissimilar from other claims lacking**

**such a source of repayment outside of the plan**. [*Loop I*, 442 B.R. 716-17 (italics in original, boldface added, and some citations moved from footnotes to bracketed text)]

Respectfully, I disagree with that interpretation of each of the three special circumstances listed in *Johnston*.

1. <u>A guaranty is not the same as collateral</u>.  A guaranty of a deficiency claim is not the same as additional collateral for that claim, for both practical and legal reasons:  (a) Although guaranties are common and often provide useful incentives, by the time a borrower defaults the guarantors are frequently judgment proof.  (b) It is less common for an unsecured claim against a debtor to be secured by collateral of a non-debtor, and such collateral may substantially enhance the prospect of recovery (as in *Johnston*, as discussed below).  (c) Various laws including the Bankruptcy Code accord special treatment to claims that are secured by collateral.  *See, e.g.,* 11 U.S.C. § 1111(b) & 1129(b)(2)(A) & (B).  *See also Barakat*, 99 F.3d at 1527 (separate classification of tenant security deposit claims was permissible because of substantial practical and legal differences from other claims).

2. <u>The litigation in *Johnston* involved differences in *rights*, not just the dollar amount of the claim</u>.  The bankruptcy court in *Johnston* found that the litigation "may confer *rights* separate from all other unsecured creditors." *Johnston*, 21 F.3d at 326 (emphasis added).  The Ninth Circuit does not explain what rights might be conferred, but it considered this finding important enough to specifically note it in describing the litigation.

3. <u>Collectability was a factor in *Johnston*</u>.  The third special circumstance cited in *Johnston* is that Steelcase could be paid in full before all other unsecured creditors. *Johnston*, 21 F.3d at 328.[2]  *Loop I* interprets this to refer to the treatment of

---

[2] Admittedly, *Johnston* is not entirely clear about including this third special circumstance. At one point it cites all three special circumstances in support of its statement that "Steelcase *is* situated differently from other unsecured creditors." *Johnston*, 21 F.3d at 328 (emphasis in original). A few sentences later, however, *Johnston* repeats only the first two circumstances in summarizing why the "legal character" of Steelcase's claim is "*not* 'substantially similar to the other claims or interests of such class[es].'" *Id.* (emphasis in original). In any event, with or without the third circumstance *Johnston* did not hold that the existence of a non-debtor source of payment is by itself enough to make a claim legally dissimilar from other general unsecured claims, thus *requiring* separate classification.

-11-

Steelcase under the debtor's plan. But more likely the Ninth Circuit was referring to the ability of Steelcase to collect a meaningful recovery *from non-debtor sources*, namely COS and the collateral pledged by COS. In other words, *Johnston* was taking into account collectability.

For these reasons the special circumstances in *Johnston* went beyond the mere existence of a potential third-party source of repayment like a (possibly worthless) guaranty. *Loop I*, 442 B.R. at 717; *Loop II*, 465 B.R. at 541. Those special circumstances involved the rare situation of (1) a deficiency claim that is secured by collateral, (2) pending litigation that could affect not only the dollar amount of the claims but also the creditor's rights, and (3) collectability of the claim at issue from non-debtor sources.

All three special circumstances were required in *Johnston.* Not one such special circumstance is present in this case, which is more like *Barakat*.

In *Barakat* there was a deficiency claim against the debtor and also against other persons (other members of the Barakat Group), which is very similar to Coastline's claim against Debtor and also against the guarantor in this case. Unlike *Johnston,* but similar to *Barakat*, (1) in this case there is no showing of any non-debtor collateral for the debt, (2) there is no pending litigation that may establish rights of Coastline different from the rights of general unsecured creditors, and (3) Debtor has not shown that Coastline's claim is meaningfully collectable from any non-debtor source.

Therefore under Ninth Circuit authority separate classification is not required.

### 5. **Alternatively, On The Facts Presented Coastline's Deficiency Claim Is Substantially Similar to Other General Unsecured Claims**

Assuming for the sake of discussion that the foregoing analysis were incorrect and that the legal analysis of *Loop I* or *Loop II* applied instead, I find that Coastline's deficiency claim is substantially similar to other general unsecured claims. This is an alternative reason why there is no mandatory separate classification under 11 U.S.C. § 1122(a).

Debtor has not shown that as a factual matter Coastline has any realistic alternative source of recovery, and the burden of proof is appropriately on Debtor to make that showing under both 11 U.S.C. § 362(d)(2) and § 1123. Alternatively, assuming for the sake of discussion that the burden of proof were on Coastline, it has presented satisfactory evidence that relative to the size of its deficiency claim the guarantor (Mr. DeBelling) is "pretty much judgment proof." *Reply* (dkt. 76) at 4:16 (and evidence cited therein).

For all of the foregoing reasons, separate classification is not *required*. That leaves step two of the classification analysis: whether it is *permissible*.

### 6. Step Two: Debtor Has Not Shown That Separate Classification Would Be Appropriate

It is theoretically possible that there could be some "legitimate business or economic justification" for separately classifying Coastline's deficiency claim that would not amount to "gerrymandering." But Debtor has not suggested any justification other than wanting to confirm a plan.

Nor is it apparent on the facts of this case that any justification would be sufficient, or that any resulting plan would be "fair and equitable." Non-insider unsecured creditors amount to a total of less than $9,000, and at best Debtor would be able to offer them only a minimal dividend. Insiders allegedly have claims of approximately $1.4 million, but they too would receive at best a dividend that would be vanishingly small in comparison to that alleged debt.

This case is essentially a contest between Coastline and Debtor's insiders acting to protect their interests as equity holders, not primarily their interests as creditors. As Coastline points out, Debtor's equity holders cannot retain their interests in Debtor under the absolute priority rule of 11 U.S.C. 1129(b)(2)(B)(ii). Theoretically they might be able to purchase new equity interests under the new value exception or corrolary to the absolute priority rule (and sometimes it is realistic to suppose that they might be motivated to make such a purchase, for tax purposes or other reasons). *Bank of Am. Nat. Trust & Sav. Assn. v. 203 North LaSalle St. P'ship*, 526 U.S. 434 (1999). But there

has been no intimation, let alone any evidence, that Debtor has any prospect of obtaining funding for such new value.

For all of these reasons, Debtor has not shown how cramdown would be possible. It has not met its burden to show "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers,* 484 U.S. at 376 (citation and internal quotation marks omitted).[3]

### 7. Policy Considerations Support The Foregoing Interpretation and Application of 11 U.S.C. § 1123

In interpreting the statute and Ninth Circuit authority, lower courts should be wary of holding that claims of the same priority *must* be separately classified, which is the consequence of holding that such claims are not "substantially similar." *Loop I*, 442 B.R. at 715 & n. 6; *Loop II*, 465 B.R. at 536-37. As noted above, although *Loop I and II* both speak in terms of the bankruptcy court's discretion, that is difficult to reconcile with their statements appearing to mandate that any claim for which there is a non-debtor source of payment *must* be separately classified.

Such mandatory separate classification can cut against debtors as well as creditors, depending on the voting dynamics in any given case. Such a mandatory separation of claims also appears to be contrary to the policies underlying the Bankruptcy Code, as summarized by the Ninth Circuit in describing a case with which it expressed agreement:

> [S]eparate classification for the purpose of preventing the undersecured creditor from rejecting the plan is contrary to the principles underlying the Bankruptcy Code, that is, that *creditors holding greater debt should have a comparably greater voice in the reorganization*. ... Although [this] will effectively bar single asset debtors from utilizing the Bankruptcy Code's cramdown provisions, the court was not persuaded that a single-asset debtor should be able to cramdown a plan that disadvantages the largest creditor. Thus, absent a legitimate business or economic reason, separate classification is not permitted. [*Barakat*, 99 F.3d at 1526 (emphasis added) (citing *In re Boston Post Rd.,* 21 F.3d 477, 483 (2d Cir. 1994)]

---

[3] Coastline suggests that if all else fails it would buy the other non-insider claims and vote them against any plan. In view of the determinations in the text it is not necessary to reach that issue, or to determine the likelihood that Coastline could purchase a sufficient number of claims, that no competing purchaser would purchase claims, and that any such purchased claims would not be designated under 11 U.S.C. § 1126(e).

Another concern is what limits can be applied to *Loop I and II*.  If the existence of a (possibly worthless) guaranty is enough to *require* that a claim be separately classified, simply because there is a theoretical non-debtor source of payment, then how about other claims that may be more or less collectible for practical or legal reasons?  Should separate classes be *mandated* for important trade creditors, unimportant trade creditors, personal injury creditors with or without insurance, and so on?  For some of these creditors, separate classification might be appropriate depending on the circumstances; but that determination can be made in step two of the analysis – the discretionary rather than the mandatory step.

For these reasons the existence of a guaranty is an insufficient basis to classify a deficiency claim separate from all other general unsecured claims.

## IV. **CONCLUSION**

Coastline has not shown bad faith by Debtor or established other cause for relief from the automatic stay under 11 U.S.C. § 362(d)(1) or for conversion under 11 U.S.C. § 1112.  But Coastline has shown that Debtor lacks equity in the Property and Debtor has not shown "a reasonable possibility" that it can cram down a plan and accomplish "a successful reorganization within a reasonable time."  *Timbers,* 484 U.S. at 376 (citations omitted).  Therefore, relief from the automatic stay is appropriate under 11 U.S.C. § 362(d)(2).

DATED: May 15, 2012

United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:
**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)**  **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4**)  **Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*)  ***TENTATIVE RULINGS RE CLASSIFYING DEFICIENCY CLAIMS ETC., IN CONNECTION WITH MOTIONS OF COASTLINE RE HOLDINGS CORP (1) FOR RELIEF FROM THE AUTOMATIC STAY AND (2) TO CONVERT CASE FROM CHAPTER 11 TO CHAPTER 7*** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of ***5/15/2012***, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Craig G. Margulies: cmargulies@margulies-law.com
Scott H. Noskin: snoskin@mbnlawyers.com, krose@mbnlawyers.com;amcdow@mbnlawyers.com
Russell Clementson: russell.clementson@usdoj.gov
United States Trustee (LA): ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                              **F 9021-1.1.NOTICE.ENTERED.ORDER**